This case on today's docket is the case of Warren Reagan, Special Administrator of the State of Michael Reagan, D.C. v. State Farm Insurance Company. We have the Cabinet of Directors with me here, and the State Farm Insurance Company. Thank you, Your Honor. It is with no great pleasure that I come here for the third time on this case. It started, as the Court is well aware, in 1994 with the death of Michael Reagan, and we are still trying to complete this case. What we're here today on is the second, third, and fourth decisions of the arbitration. The Court will remember the first time we were here, these arbitrators ignored the requirements of the procedural laws of the State of Illinois, allowing an expert to testify on behalf of the State Farm that had not been disclosed and discovered. When we went back to Court after that first amendment, I requested the Court to appoint different arbitrators, because I believe that the error was so important and so basic that new arbitrators would have been required. That was denied, and we went back for arbitration. They also denied costs in the first proceeding. The next arbitration came down, and the arbitrators held that the plaintiff failed to establish that Reagan was less than 50 percent at fault in the collision. As the Court knows, that is not the standard in the State of Illinois. First, it is not the plaintiff's burden to prove free or to contribute for a negligence. Second, the correct standard is if you are more than 50 percent at fault, you are claimed to be denied. In this situation, they found that we hadn't proved that he was less than 50 percent at fault, which is an incorrect standard. At that point, we should have found an award with an appropriate reduction in the amount of damages. That was a clear and obvious error of law on the face of the arbitration award. We filed a motion to vacate that award. The judge, at that point, on his own, decided that the order was ambiguous. Now, what he found ambiguous about that order, I have no idea. But certainly, in my opinion, it was not ambiguous. But he referred it back to the same arbitrators again for what he considered a clarification. The Court has the authority to do that if, in fact, it finds that the order is ambiguous. Arbitrators then came back with a new decision, which essentially was identical to the first decision. They still held that the plaintiff had failed to establish that Michael Reagan was less than 50 percent at fault in the collision. We, at that point, filed another petition to vacate. The plaintiff there was a clear statement of the law, obvious from the decision of the arbitrators. Again, we requested it be sent to new arbitrators for a new decision. Again, the Court, this time a different Court, sent it back to the arbitrators again for clarification. In fact, at this point in time, he told them what the standard was in his order, and they came back and dutifully changed the order to say that he was guilty of more than 50 percent at fault in that collision. We again filed a motion to set that aside based upon all of the error that had preceded it and the fact that, given the only evidence at the arbitration of what happened, was our reconstruction action. We stated that there were multiple possible scenarios, but in every single one of those scenarios, the front of Michael Reagan's vehicle was totally within his lane of travel, and in every single possibility, the front of the other vehicle was in Michael's lane by anywhere from six inches to two feet. So that was the only evidence of what happened, and how they could find contributory negligence from that kind of testimony, that kind of evidence, is absolutely unfair to me. It is particularly troublesome when you consider that one of the arbitrators was a fellow of the American College of Trial Lawyers and had many other accolades in his name. There is no question that this individual was certainly involved in the judicature. How he could sign on to something like that and how he could sign on to any of the four of those decisions is beyond me. We also raised the objection that the decision was obviously based upon something other than the law, prejudice or something. But, of course, that was denied as well. The judge finding that all three of the arbitrators were good and honorable men wouldn't do something like that. I don't know how else it could happen. That many errors, four errors, four decisions, people I think we should know better. This decision should be remanded and this court should order that our costs be paid and should order that a new arbitration panel be appointed. If you have no questions, that's all I have to say about this matter. I have no further questions. I hope that you have the opportunity to come and vote. Mr. Thornton? Your Honors, may it please the Court, my name is Jason Gourley and I represent the defendant in this case, State Farm Insurance Company. This case concerns the high degree of deference afforded to an arbitration panel and the plaintiff's attempt to disregard that deference and re-weigh the evidence in contravention of well-established law. Illinois courts have consistently held that a court should not overrule an arbitration award simply because the court's interpretation differs from that of an arbitrator and that whenever possible, an arbitration decision must be construed to uphold its validity. Thus, it is well settled in Illinois that positions to vacate arbitration awards will only be granted in extraordinary circumstances. This is not one of those extraordinary circumstances. Plaintiff's primary argument is that the arbitrators exceeded their authority by disregarding Illinois's substantive law. However, plaintiff has failed to meet his burden of overcoming the presumption that the arbitrators acted within the authority provided by the contract and accordingly, the circuit court's order denying a plaintiff's petition to vacate should be affirmed. At the outset, an important distinction must be made between a challenge involving what the arbitrator may decide as opposed to the manner in which the arbitrator came to his decision. The challenge involving the former, that is, what the arbitrator may decide, involves whether the arbitrator exceeded his or her authority. The latter, that is, the manner in which the arbitrator reached his or her decision, involves whether the arbitrator made a mistake of law or fact. And this distinction is important here because an award may be vacated where an arbitrator exceeds his or her authority but not where the arbitrator makes a mistake of law or fact. Here, the plaintiff cannot demonstrate that the arbitrators exceeded their authority by making a mistake of law and thus the award may not be vacated. In other words, the plaintiff's argument that the arbitrators ignored Illinois's substantive law is an argument based on the manner in which the arbitrators reached their decision as opposed to a challenge based on what the arbitrators may decide. The facts of this case demonstrate that the arbitrators acted well within the authority granted then pursuant to the party's contract. The contract between the parties required the arbitrators to decide two questions. The first was whether the insurer was legally entitled to collect damages from the underinsured party, and the second, if they answered that question in the affirmative, in what amount of damages should be awarded. A review of the arbitrators' final decision clearly demonstrates that the arbitrators decided that specific issue, that is, they decided that the insurer was not entitled to collect damages from the underinsured. The case decided by the plaintiff in support of his argument that the arbitrators exceeded their powers are plainly distinguishable from this matter. For instance, in Lehman Brothers v. Hedrick, this is a case cited in the plaintiff's brief, the court held that the arbitrators exceeded their authority where they awarded damages not based on one of two interest rates that were set forth in the contract. So there, the arbitration contract at issue specified two interest rates by which the arbitrators could award damages because the arbitrators declined to award damages based on one of those interest rates clearly set forth in the contract demonstrated that the arbitrators exceeded their powers. Similarly, in Spencer v. Ryland, another case cited in the plaintiff's brief, the court held that the arbitrators exceeded their authority where they failed to award attorney's fees where the contract provided such fees must be awarded. So there again, the contract at issue required the arbitrators to award attorney's fees to the prevailing party because the arbitrators declined to follow the terms of the contract and to award attorney's fees pursuant to the contract. They acted in contravention of the contract, and therefore, they exceeded their powers. But here, there is absolutely no evidence that the arbitrators acted inconsistently with the terms of the contract. As I stated earlier, the contract required them to decide two issues. They decided those two issues, and there's absolutely no aspect of the contract that they acted in contravention of. The plaintiff does mention in his brief that Illinois law is required to be followed within a contractual language, and the contract does state that procedural or law dealing with the admission of evidence must require the application of state law, but the contract doesn't address the application of Illinois substantive law. And as the plaintiff made clear in his argument, his contention here is that the arbitrators failed to follow Illinois substantive law. State Farm v. Stuckey is directly on point with regard to this matter. That's a case discussed in our brief. There, the party challenging the arbitrator's decision argued that the arbitrators exceeded their authority by refusing to apply the dead man's act where the contract provided that state or court rules of evidence would apply. The court rejected this argument, holding that the contract's provisions did not expressly resolve the evidentiary issue, and thus, the arbitrators did not exceed their authority. So unlike the cases cited by the plaintiff, in this case, in Stuckey, there was no specific provision which resolved the issue that was brought before the court. There, because the contract required the application of Illinois procedural law, the particular issue being challenged was not directly addressed in the contract. So therefore, the court could not hold that the arbitrators exceeded their powers. Therefore, because the plaintiff cannot demonstrate that the arbitrators exceeded their authority, the arbitration award may not be vacated, and this court should affirm the circuit court's order denying the plaintiff's petition to vacate. Similarly, the plaintiff cannot demonstrate that the arbitrators made a gross error of fact to law, such that the award may be vacated. Under this standard, only where it appears on the face of the award that the arbitrator was so mistaken to the law that if it applies to a mistake, the award would be different, may a court review the legal reasoning used to reach that decision. An example given by the Illinois Supreme Court under this provision is where an arbitrator made a decision that was based on an old version of the statute that had since been amended. So the Supreme Court explained that in such an instance, if it was clear on the face of the award that the old statute had been applied where the new statute should have been applied, that would be a gross error of law arising to the level where the award could be vacated. The plaintiff here cannot meet that standard. In fact, the First District has considered and rejected an argument almost identical to the argument raised by a plaintiff in Klatz v. Western States Insurance Company. In Klatz, the plaintiff initiated an arbitration hearing before a three-person arbitration panel against his insurer, seeking a determination of liability with respect to an underinsured provision of his voter's policy. The plaintiff presented the only evidence at the arbitration hearing, and he testified that as he was driving his lane, another vehicle traveling in the opposite direction crossed into his lane of traffic, collided with his vehicle, and it caused him to collide with the wall. In that case, the majority of the arbitrators found in favor of the insurer and issued a decision accordingly. In a petition to vacate, the plaintiff argued that the arbitrators improperly disregarded the sole evidence before the panel of liability, and that is the plaintiff's testimony in how the evidence transpired. The Court of Appeals rejected the plaintiff's argument in that case, and the Court of Appeals recognized that the award could not be erroneous because the award simply stated the majority of arbitrators found in favor of the insurer. And similarly here, the arbitrator's award set forth the arbitrator's finding that the plaintiff failed to meet his burden of proof on the issue of liability, and that Michael Rabin, the plaintiff, was barred from recovery. The plaintiff here faces the same problem as the plaintiff in class, and that is that the error allegedly committed does not appear on the face of the award, but instead relates to the arbitrator's evaluation of the evidence. Such an alleged error is not a basis for vacating an award, as made clear by the court in class. Because there is no gross error or fact of law on the face of the award, there is no basis for vacating the decision, and the circuit court should be affirmed. I'd like to briefly address an argument the plaintiff made in his brief relating to the circuit court's remanding previous orders for clarification. The plaintiff alleged in his brief that the circuit court had no authority to do so. The Illinois Uniform Arbitration Act specifically provides that, and I'll quote, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award for the purpose of clarifying the award. So clearly the Illinois Arbitration Act authorizes the circuit court, if it deems necessary, to submit a decision back to the arbitrators so that they may clarify that decision. And this statute is in line with consistent holdings from the court requiring that the court must always construe an arbitration award to uphold its validity. Because the court is allowed to resubmit a decision to the arbitrators, it allows the court to ensure that whenever possible the arbitration award may be upheld. Finally, a plaintiff's attempt to vacate the arbitrator's award is nothing more than an impermissible attempt to lead this court to reweigh evidence that has already been evaluated by the arbitrators. Although this court should not reexamine evidence pursuant to the deferential standard given to arbitrators, it must be noted that the arbitrators reached an abundantly reasonable decision given the facts presented in this case. The arbitrators in this case properly evaluated the evidence, and the circuit court properly declined plaintiff's invitation to reweigh the evidence. The circuit court properly recognized that the arbitrators had an opportunity to consider the testimony, assess the credibility of witness, and consider exhibits, and that substantial deference should be afforded the arbitrators in this instance. As plaintiff mentioned earlier in his argument, the plaintiff attempted to demonstrate liability on the part of the underinsured by introducing testimony of Francis Oldham, his expert. Mr. Oldham viewed the accident site approximately eight months after the accident occurred. The gouge marks by which Mr. Oldham based most of his testimony and his opinion were not identifiable at this time. Mr. Oldham never took pictures of the scene of the accident, nor did he inspect the underinsured's vehicle. With respect to liability, Mr. Oldham testified he was of the opinion that there were a range of possible scenarios by which the vehicles, in this instance, may have collided. He testified that in one of these scenarios, the rear portion of the plaintiff's decedent's vehicle was over the center line when the accident occurred. However, Mr. Oldham could not say in a reasonable degree of engineering certainty which of the possible scenarios occurred in the accident. He could not say within a reasonable degree of engineering certainty how the vehicles were positioned at the time of the collision, nor could he say within a reasonable degree of engineering certainty where the vehicles were located on the road when the collision occurred. Finally, he could not state specifically what caused the gouge mark, even though the gouge mark was the only physical evidence that he was relying on to reach his conclusions. Accordingly, Mr. Oldham's testimony does not satisfy plaintiff's burden of proof, but in fact suggests liability on the part of the plaintiff in being over the center line at the time of the collision. So it's important to note that the arbitrators here had an opportunity to assess the credibility of the witness and assess the testimony of the witness. It's not clear from the award exactly what the arbitrators determined happened, but all we can do at this point is speculate, because one of the scenarios Mr. Oldham mentioned was possible was that Mr. Reagan's vehicle, the back end of Mr. Reagan's vehicle, was across the center line. The arbitrators certainly could have concluded that Mr. Reagan was swerving back over the road and the underinsurer was attempting to evade the oncoming path of the vehicle. It's just not clear from the face of the award, but that's part of the reason courts give such a significant amount of deference to the arbitrators. Let me go to hypothetical. Under your position regarding the law, it had been a little different and there was, let's say, all the evidence that the plaintiff presented that there was a green light and the panel found there was a red light. Would that be the type of scenario that you believe could exceed the panel's authority? Your Honor, I think that the panel generally has the authority to make a conclusion with regard to any of the evidence, but I think that the key... But doesn't there have to be some credible evidence? Your Honor, I agree that there needs to be some credible evidence, but the key here is the deferential standard that's used for an arbitrator's decision. But Mr. Ripplinger's position was that the only credible evidence was put forth by their expert that the plaintiff's car was in its own lane. Well, as Your Honor knows, we contest Mr. Ripplinger's assertion that that was the only credible evidence offered. We're arguing that it's not credible. But getting back to your question, I agree that there needs to be some sort of credible evidence on the record, but the key is that such a challenge would be whether or not the arbitrators made a mistake in fact or law, and such a mistake or fact or law to be reviewable must appear on the face of the award. So certainly... So under the red light, green light, we still could not review that case? Your Honor, I believe that that is correct. I believe that if an assertion... If the arbitrators do not state that in their award, it does not appear on the face of the award, then Illinois law requires that arbitrators be given their due deference and the arbitrators be permitted to come to the conclusion that they determined by their review of the evidence. Now, if the award stated that the arbitrators found that there was only a... that there was a red light when the evidence demonstrated there's a green light, and they state in their award that they made an evidentiary finding, then certainly the court could review the award because it's an error occurring on the face of the award. Accordingly, Your Honors, the defendant respectfully requests this court affirm the order of the circuit court denying plaintiff's petition for bail. Thank you. Thank you, Mr. Berwick. Do you have anything to add? No, I don't. Do you have any questions? No. Okay. We will just take the rebrand.